IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Randal W. Howard; Arizona Department of Revenue,<br><br>    Defendants. | No. CV 07-620-TUC-DCB (HCE)<br><br>**REPORT & RECOMMENDATION** |

Pending before the Court are Defendant Randal Howard's: (1) December 26, 2007 Motion to Dismiss (Doc. No. 10); (2) January 8, 2008 Motion to Dismiss (Doc. No. 12); (3) January 28, 2008 "Third Motion to Dismiss" (Doc. No. 15); and (4) February 25, 2008 Motion to Dismiss (Doc. No. 20) For the following reasons, the Magistrate Judge recommends that the District Court deny Defendant Howard's motions to dismiss.

**I.     FACTUAL & PROCEDURAL BACKGROUND**

On November 26, 2007, the Government filed the instant Complaint to Reduce Federal Tax Assessments to Judgment and to Foreclose Federal Tax Liens on Real Property (Doc. No. 1). Named as Defendants are: Randal Howard and the Arizona Department of

Revenue.[1]  The Complaint seeks to reduce to judgment against Defendant Howard alleged outstanding federal income tax liabilities and civil penalties for the years: 1983, 1984, 1987, 1988, 1989 1990, 1991, 1992, 1996, 1997, 1998, 1999, 2000, 2001, 2002, and 2003.  The Government also seeks to foreclose federal tax liens on real property currently titled in Defendant Howard's name.

Defendant Howard, acting *pro se,* has filed four separate motions to dismiss as discussed below.

## II.    THE PENDING MOTIONS TO DISMISS

### A.    Timeliness

The Government argues that of the four pending motions to dismiss, only Defendant Howard's December 26, 2007 Motion to Dismiss is timely.  The Government points out that the other three motions were filed more than twenty days after the December 5, 2007 service of the summons and complaint herein.  (*See* Response to Third Motion, p. 2 nn. 1-2; Response to Fourth Motion, p. 2( (Doc. Nos. 16, 21)

A motion asserting Rule 12(b) defenses "must be made before pleading if a responsive pleading is allowed."  Fed.R.Civ.P. 12(b).  The record is clear that Defendant Howard has not filed an answer.  The Ninth Circuit allows a motion under Rule 12(b) any time before the responsive pleading is filed.  *See Aetna Life Ins. Co. v. Alla Medical Servs. Inc.,* 855 F.2d 1470, 1474 (9th Cir. 1988); *Bechtel v. Liberty Nat'l Bank,* 534 F.2d 1335, 1340-1341 (9th Cir. 1976).  Additionally, with regard to Defendant Howard's January 8, 2008 Motion to Dismiss challenging the Court's jurisdiction, "it has long been well-established that the court's lack of subject matter jurisdiction may be asserted at any time by any interested party..." Charles Alan Wright & Arthur R. Miller, 5B *Federal Practice and Procedure,* § 1350.  *See also United States v. Bennett,* 147 F.3d 912, 914 (9th Cir. 1998); *Emrich v. Touche Ross & Co.,*

---

[1] "Defendant Arizona Department of Revenue...is made a party to this action because it may claim some right, title, or interest in the real property that is the subject of this action." (Complaint, p. 2)

- 2 -

1  846 F.2d 1190, 1194 n.2 (9th Cir. 1988). Consequently, all of Defendant Howard's motions
2  are timely.

3  On March 31, 2008, Defendant Howard filed a "Rebuttal to Prosecutions' Response."
4  (Doc. No. 23) The Government Responded to Defendant Howard's fourth, and final, Motion
5  to Dismiss on February 28, 2008. (Doc. No. 21) Defendant Howard had five days after
6  service of the responsive memorandum to file a reply memorandum. L.R.Civ. 7.2(d), Rules
7  of Practice of the U.S. District Court for the District of Arizona. Defendant Howard's March
8  31, 2008 "Rebuttal..." is untimely and will not be considered. *See Ghazali v. Moran*, 46
9  F.3d 52 (9th Cir. 1995) ("pro se litigants are bound by the rules of procedure"); *King v.*
10 *Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987)(*"[p]ro se* litigants must follow the same rules of
11 procedure that govern other litigants").

12     B.     Defendant Howard's December 26, 2007 Motion to Dismiss (Doc. No. 10)

13 In his December 26, 2007 Motion to Dismiss, Defendant Howard seeks dismissal of
14 this action because the statute of limitations bars recovery and the homestead exemption
15 prevents foreclosure on his property.

16     1.     Standard

17 In assessing the complaint on a motion to dismiss, all allegations of fact are taken as
18 true. *Sanders v. Brown,* 504 F.3d 903, 910 (9th Cir. 2007). However, conclusory allegations
19 and unreasonable inferences are insufficient to defeat a motion to dismiss. *Id.* To survive
20 dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on
21 its face." *Bell Atl. Corp. v. Twombly,* __ U.S. __, 127 S.Ct. 1955, 1987 (2007). That is, when
22 all the allegations are taken as true and construed in the light most favorable to the plaintiff,
23 the factual allegations pled "'must be enough to raise a right to relief above the speculative
24 level.'" *Williams v. Gerber Products Co.,* 523 F.3d 934, 938 (9th Cir. 2008) (*quoting Bell*
25 *Atl. Corp.,* __ U.S. __, 127 S.Ct. at 1965). "Once a claim has been stated adequately, it may
26 be supported by a showing consistent with the allegations in the complaint." *Bell Atl. Corp.,*
27 __ U.S. __, 127 S.Ct. at 1968.

28

### 2. Statute of Limitations

The statute of limitations defense may be raised by a motion for dismissal pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, "[i]f the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980) (applying standard for motions to dismiss under Rule 12(b)(6) to motion to dismiss based on expiration of the statute of limitations).

The Complaint sets out the dates when the assessments at issue were made. In responding to Defendant Howard's statute of limitations defense, the Government attached to its Response (Doc. No. 13) several exhibits including a declaration, Certificates of Assessments and Payments (hereinafter "Certificates of Assessments")[2] which were signed under seal (Ex. A-S), court docket pages reflecting the dates of Defendant Howard's three bankruptcy proceedings (Ex. T-V), a "Case Activity Record Print" reflecting that Defendant Howard requested a Collection Due Process (hereinafter "CDP") Hearing on May 22, 2001 (Ex. W), and the January 31, 2002 Notice of Determination regarding Defendant Howard's appeal from the CDP Hearing (Id.) On May 15, 2008, the Court informed the parties that: (1) the Government's exhibits would be considered in resolving Defendant Howard's Motion to Dismiss (Doc. No. 10) pertaining to the statute of limitations defense; and (2) pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, Defendant Howard's Motion to Dismiss (Doc. No. 10) would be treated as a motion for summary judgment with regard to the statute of limitations issue. (Doc. No. 24) The parties were given additional time to file supplemental briefs. (Id.) The Court also directed the Government to address two questions raised from the previous filings. (Id.) On May 20, 2008, the Government filed its

---

[2]Certificates of Assessments are a certification of what the Internal Revenue Service records show about the assessment against, and payments made, by a taxpayer of a particular tax. Certificates of Assessments are public records and qualify as self-authenticating when filed under seal. *Hughes v. United States,* 953 F.2d 531, 535 (9th Cir. 1992). In the absence of contrary evidence, Certificates of Assessment are prima facie evidence of the facts contained therein. *Hughes,* 953 F.2d at 541.

- 4 -

1  Supplemental Brief and exhibits. (Doc. No. 25) Defendant Howard did not file additional
2  argument or evidence.

3  "A motion for summary judgment will be granted if the moving party has
4  demonstrated the absence of any issue of material fact and the right to judgment as a matter
5  of law." *Jablon,* 614 F.2d at 682 (citations omitted).

### a. Pertinent Statutory Provisions
#### (1.) Assessment

8  Assessment is the first step in the collection process. Michael Saltzman, *IRS Practice*
9  *& Procedure,* ¶14.05[1]. An assessment is the official act of recording a taxpayer's liability
10 on a summary list. *Id.*

11 The general rule is that an assessment must be made within three years after the tax
12 "return was filed (whether or not such return was filed on or after the date prescribed)...."
13 26 U.S.C. § 6501(a). However, this general rule is subject to certain exceptions including
14 the taxpayer's failure to file a return where, in such case, "the tax may be assessed, or a
15 proceeding in court for the collection of such tax may be begun without assessment, *at any*
16 *time*." 26 U.S.C. § 6501(c)(3) (emphasis added). *See also Edwards v. Comm'r ,* 680 F.2d
17 1268, 1269 n. 1 (9th Cir. 1982) ("Clearly no statute of limitations applies...for those years in
18 which [the taxpayer] filed no returns at all.")

19 Additionally, prior to 1994, the three-year statute of limitations for tax assessments
20 under section 6501(a) was tolled during the pendency of taxpayer's bankruptcy proceeding
21 where the claim arose before the commencement of the bankruptcy proceeding. 11 U.S.C.
22 § 362(a)(6), *subsequently amended by* Bankruptcy Reform Act of 1994, H.R. 5116, 103d
23 Cong. §§ 116, 702 (1994 amendment removing such provision). Thus, in cases where the
24 taxpayer filed a bankruptcy petition prior to October 22, 1994, the IRS was precluded from
25 making assessments for claims predating the bankruptcy filing until the bankruptcy court
26 dismissed the petition. *Id.*; *See also Schwartz v. United States,* 954 F.2d 569, 571 (9th Cir.
27 1992) (IRS tax assessment made during pending bankruptcy proceeding "violated the
28 Bankruptcy Code's automatic stay provision.")

1                                                 (2.)    Collection

2         A levy must be made or a collection proceeding in court must commence "within 10

3 years after the assessment of the tax." 26 U.S.C. § 6502(a). However, the statute of

4 limitations pertaining to collection proceeding is tolled during the period when a taxpayer's

5 bankruptcy case is pending, plus an additional six months thereafter. 26 U.S.C. § 6503(h)(2);

6 11 U.S.C. § 362(a). Additionally, the statute of limitations for collection proceedings is

7 tolled for the period during which a taxpayer's CDP hearing, or appeal thereof in Tax Court,

8 is pending and "[i]n no event shall any such period expire before the 90th day after the day

9 on which there is a final determination in such hearing." 26 U.S.C. § 6330(e)(1).

10                         b.      Defendant's Howard's Bankruptcy Proceedings and CDP Hearing

11         The record reflects that Defendant Howard has been involved in three separate

12 bankruptcy proceedings. He filed his first petition under Chapter 13 on June 14, 1991 and

13 the bankruptcy court entered a dismissal on July 24,1996. (Response, Ex. T) (Doc. No. 13)

14 Defendant Howard filed his second petition, this time under Chapter 7, on December 6, 1996.

15 (Response, Ex. U) The second matter was discharged on April 7, 1997. (Id.) Thus, with

16 regard to the limitations period for *assessments*, the Government correctly asserts that the

17 automatic stay provision of the bankruptcy statute in effect when Defendant Howard filed

18 his first bankruptcy petition in April 1991 precluded the IRS from making assessments until

19 the bankruptcy court dismissed that petition on July 24, 1996. (Response, p. 3 (citing

20 Bankruptcy Reform Act of 1994, H.R. 5116, 103d Cong. §§ 116, 702)). Additionally, with

21 regard to *collection* efforts, the statute of limitations was tolled pursuant to section

22 6503(h)(2) from June 14, 1991 (when Defendant Howard first initiated bankruptcy

23 proceedings) until October 4, 1997 (six months after the conclusion of the second bankruptcy

1 proceeding[3]): a total of 2,305 days.[4]  Defendant Howard's third bankruptcy petition, filed
2 on April 16, 1999, was dismissed on April 27, 1999.  (Response, Ex. V) Therefore, pursuant
3 to section 6503(h)(2), the statute of limitations for collections was also tolled from April 16,
4 1999 (when Defendant Howard initiated the third bankruptcy proceeding) until October 24,
5 1999 (six months after the conclusion of the third bankruptcy proceeding): a total of 192
6 days.

7 Additionally, on May 22, 2001, Defendant Howard requested a CDP Hearing for tax
8 years 1984, 1985, and 1986.  (Response, Ex. W) The IRS issued a final CDP determination
9 on January 31, 2002.  Thus, under section 6330(e)(1), the statute of limitations pertaining to
10 collection was tolled from May 22, 2001 until May 1, 2002 (ninety days after issuance of the
11 January 31, 2002 final determination letter): a total of 345 days.

### c. Specific Claims

13 The Complaint alleges amounts assessed by a delegate of the Secretary of Treasury,
14 the dates such amounts were assessed, and the unpaid balance as of October 23, 2007
15 regarding Defendant Howard's income tax for the following years: 1983, 1984, 1987, 1988,
16 1989, 1990, 1991, 1996, 1997, 1998, 1999, 2000, 2001, 2002, and 2003.  (Complaint, pp. 3-

---

[3] Before the section 6503(h)(2) tolling period attributable to the first petition concluded, Defendant Howard filed his second petition. Thus the tolling period for both petitions is combined.

[4] There are two methods by which the limitations period can be computed: the "actual days" method, and the "month-days" method. *See United States v. Tyrrell,* 329 F.2d 341 (7th Cir. 1964) (approving district court's use of the "actual days" method instead of "month-days" method employed by the IRS); *see also* Michael Saltzman, *IRS Practice & Procedure,* §5.07[1]. In calculating the tolling periods herein, the Court has employed the "actual days method."  Under this method, for example, six months is calculated as 180 days thus resulting in the conclusion that the tolling period attributable to Defendant Howard's first and second bankruptcy proceedings ended on October 4, 1997.  Under the Government's month-days method, the tolling period ended on October 7, 1997.  Regardless of this difference, the choice of method herein is unimportant because the Government's action is timely when measured by either method.  (*See* Government's Response, pp. 2-11 (calculating dates under IRS method) & discussion *infra* (calculating dates under the actual days method).

- 7 -

1  4) The Complaint also alleges the same information with regard to civil penalties imposed
2  pursuant to 26 U.S.C. § 6673 in 1990, 1991, 1992. (Id.)

### d. Timeliness of Assessments

#### (1.) Assessments for Income Tax Years 1983, 1984, and 1996 through 2003

Regarding tax years 1983,[5] 1984, and 1996 through 2003, the record reflects that assessments were made in one or more of the following years: 1990, 1991, 2002, 2004, 2005, 2006 and 2007. (Response, pp.7-8 & Ex. A-B, L-S)  The Government asserts that Defendant Howard did not file income tax returns for the years 1983, 1984, and 1996 through 2003. (Response, p.5)  Where no return is filed, "the tax may be assessed...at any time." 26 U.S.C. § 6501(c)(3).  Therefore, the Government is correct that the assessment for tax years 1983, 1984, and 1996 through 2003 are timely because the statute of limitations does not apply. (Response, p. 5 (citing 26 U.S.C. 6501(c)(3); *Edwards,* 680 F.2d at 1269 n.1)).

---

[5] According to Defendant Howard, the IRS "claimed that [he] filed a return for...1983 but..." that he failed to sign it. (Motion, p. 2) He argues that the Government's failure to send the tax return to him for signature is bad faith.  Defendant Howard cites no authority to support his position.  The Government states that Plaintiff did not file a tax return for 1983. (Response, p.5) Generally, "[t]he U.S. Tax Courts have consistently held that an unsigned tax return is no return at all, because an unsigned tax return would be insufficient to support a perjury charge based on a false return...Similarly, the U.S. Court of Appeals have held that an unsigned tax return does not start the statute of limitations period, within which the IRS must assess tax liability." *In re Lee,* 186 B.R. 539 (S.D. Fla. 1995) (citations omitted). *See also Lucas v. Pilliod Lumber Co.,* 281 U.S. 245, 249 (1930) (noting that the statute of limitations runs against the United States "only when they assent and upon the conditions prescribed" and holding that the filing of an unverified return did not trigger the commencement of the statute of limitations); *Kalb v. United States,* 505 F.2d 506 (2d Cir. 1974) ("Generally an unsigned return does not start the statute of limitations running."); *Doll v. Commissioner,* 358 F.2d 713 (3d Cir. 1996) (statute of limitations did not bar assessment of tax deficiency where taxpayers failed to sign the return); *Commissioner v. Krug,* 78 F.2d 57 (9th Cir. 1935) (filing of unverified return "did not start the running of the statute of limitations" period for assessment).

(2.) **Assessments for Income Tax Years 1987 through 1991**

Regarding tax years 1987 through 1991, the record reflects that assessments were made in one or more of the following years: 1992, 1997, 1998, 1999, and 2005. (Response, p.7 & Ex. C,D,F,G, I)

Assessments for tax year 1989 were entered on August 10, 1992 while the automatic bankruptcy stay was in effect. (*See* Response, Ex. F) The record also reflects that the assessments were subsequently abated. (Id.) Reassessment occurred on December 8, 1997, after the stay was no longer in effect. The Court does not consider the 1992 assessment herein in light of the abatement of same. Instead, the Court considers the assessment for tax year 1987 as made on December 8, 1997.

In mid-march 1994, Defendant Howard filed amended income tax returns for the years 1987 through 1991. (Response, p. 5 & Ex. C,D,F,G, I) Ordinarily, the IRS would have had three years from the date Defendant Howard filed the amended returns to make liability assessments. (Id. at p.5 (citing 26 U.S.C. § 6501(a)) However, Defendant Howard's first bankruptcy proceeding, filed in 1991, was still pending when he filed the amended returns in 1994. Therefore, the automatic stay precluded the IRS from making the assessments while the bankruptcy proceeding was pending. *See* 11 U.S.C. § 362(a) (1991) *subsequently amended by* Bankruptcy Reform Act of 1994, H.R. 5116, 103d Cong. §§ 116, 702. Consequently, the three-year limitations period under section 6501(a) did not begin to run until the July 24, 1996 conclusion of the first bankruptcy proceeding and the IRS had until July 24, 1999 to make the assessments at issue. Because the assessments made in 1997, 1998, and January 1, 1999 were made prior to July 24, 1999, those assessments are not time-barred.

Further, with regard to tax year 1987, the IRS assessed $16.00 in fees on October 3, 2005. (Response, Ex. C) Collection fees serve to reimburse the Government for its collection efforts. *See e.g. United States v. Powell,* 2001 WL 283808 at *9 (D.Ariz. Feb. 20, 2001). The Government persuasively argues that because the collection fees herein "were assessed during the period for collection and are not taxes, they are not subject to the assessment

- 9 -

statute of limitations which applies only to 'tax[es] imposed...'" under Title 26. (Supplemental Brief, p. 4 (quoting 26 U.S.C. §6501)) The Government's argument is well taken. The assessment of the collection fee is not barred by section 6501(a).

### (3.)    Assessment for Civil Penalties

On May 6, 1996, the IRS assessed civil penalties pursuant to 26 U.S.C. § 6673 for tax years 1988, 1990, 1991, and 1992. (Response, Ex. E,H,J,K) The Court requested that the Government address whether the automatic stay in effect during Defendant Howard's first bankruptcy proceeding, (i.e., from June 14, 1991 through July 24, 1996) precluded the May 6, 1996 assessments. (May 15, 2008 Order) (Doc. No. 24) The Government points out that the penalties were abated the same day they were made (i.e. on May 6, 1996) in light of the automatic stay. (Supplemental Brief, p. 5 & Ex. A-D) (Doc. No. 25) After the stay was no longer in effect, the IRS made the civil penalty assessments again on May 18, 1998. (Id.) "[T]he balance due presented in charts in..." the Government's briefs and Complaint "consists of interest accruals beginning on May 18, 1998, not May 6, 1996." (Id. at p. 5) Consequently, the amount specified in the Complaint for civil penalties is "collectable and owing to the IRS." (Id. at p. 6)

### e.    Timeliness of Collection
### (1.)    Collection for Income Tax Year 1983

Defendant Howard argues that the Government has already collected for 1983 liabilities.

The Government concedes that by way of levy, the IRS fully collected on the income tax liabilities that were assessed on or before July 4, 2004. (Response, p. 8, Ex. A) Subsequent to the IRS' levy, the IRS assessed an additional $10,000 penalty on October 6, 2005 and $16.00 in fees on March 26, 2007. (Id.) Therefore, the earliest relevant assessment date for 1983 income tax liabilities is October 6, 2005.[6]  Pursuant to the 10 year statute of

---

[6]Only the earliest assessment date for each tax year is discussed because "[o]nce it is shown that the statute of limitations has not run on the earliest date, all assessments made

- 10 -

1  limitations for commencement of collection proceedings under section 6502(a), the
2  Government has until October 6, 2015 to file such action. Thus, the Government's action
3  filed on November 26, 2007 is timely with regard to tax year 1983.

### (2.)   Collection for Income Tax Year 1984

The earliest assessment date for 1984 income tax liabilities is May 10, 1990. (Response, Ex. B) Ordinarily, the Government had 10 years, i.e. until May 10, 2000, to commence a collection action. *See* 26 U.S.C. § 6502(a). However, the statute of limitations was tolled for a total of 2,842 days (2,497 days due to Defendant Howard's bankruptcy proceedings and 345 days due to the CDP proceeding). Therefore, the statute of limitations expired on February 20, 2008.  The Government's action filed on November 26, 2007 is timely with regard to tax year 1984.

### (3.)   Collection for Income Tax Years 1987 and 1988

The earliest assessment date for 1987 and 1988 income tax liabilities is July 13, 1998. (Response, Ex. C, D) Without tolling, the Government had 10 years, i.e. until July 14, 2008[7] to commence a collection action. *See* 26 U.S.C. § 6502(a); Fed.R.Civ.P. (6)(a)(3).  Thus, even without consideration of the tolling provisions, this action is timely. Moreover, Defendant Howard's 1999 bankruptcy proceeding tolled the statute of limitations for 192 days until January 21, 2009. The Government's action filed on November 26, 2007 is timely with regard to tax years 1987 and 1988.

---

thereafter are necessarily timely as well." (Response, p.8 n.4)

[7]Ten years from July 13, 1998 is Sunday, July 13, 2008.  Rule 6(a) of the Federal Rules of Civil Procedure provides that "in computing any time period specified in...any...statute...[i]nclude the last day of the period unless it is a Saturday, Sunday, [or] legal holiday....When the last day is excluded, the period runs until the end of the next day that is not a Saturday, Sunday, [or] legal holiday..." Fed.R.Civ.P. 6(a)(3). Because July 13, 2008 falls on a Sunday, the statute of limitations will not expire until Monday, July 14, 2008. *Id.*; *Hart v. United States,* 817 F.2d 78, 80 (9th Cir. 1987) (Rule 6(a) applies to statute of limitations calculation).

#### (4.) Collection for Income Tax Year 1989

According to the Government, the earliest assessment date for 1989 tax liabilities is August 10, 1992. (Response, p.9) However, as discussed *supra*, at p.9, the 1992 assessment was abated and reassessed on December 8, 1997. (Response, Ex. F) Nonetheless, the Government's action filed on November 26, 2007 is timely with regard to either assessment date.[8]

#### (5.) Collection for Income Tax Years 1990 and 1991

The earliest assessment date for 1990 and 1991 income tax liabilities is June 16, 1997. (Response, Ex. G, I) Without tolling, the Government had until June 18, 2007 to commence collection proceedings. *See* 26 U.S.C. § 6502(a); Fed.R.Civ.P. 6(a)(3). The Government applies a portion of the six-month tolling provision under section 6503(h)(2) attributable to Defendant Howard's first two bankruptcy proceedings. (*See* Response, p. 9) Although the tolling period was not over, the automatic stay was not in effect on the June 16, 1997 assessment date. Therefore, the IRS was not prevented from "making the assessment or from collecting" on that date due to the automatic stay. 26 U.S.C. § 6503(h)(2). Hence, it is questionable whether section the 6503(h)(2) tolling provision attributable to the first and second bankruptcy proceedings applies in this particular instance. Section 6503(h)(2) does apply to toll the limitations period 192 days for Defendant Howard's third bankruptcy proceeding, thus, resulting in a December 27, 2007 statute of limitations date. *See* 26 U.S.C.

---

[8]If the August 10, 1992 assessment date is used, then without tolling, the Government had until August 12, 2002 to commence collection proceedings. *See* 26 U.S.C. § 6502(a); Fed.R.Civ.P. 6(a)(3). The statute of limitations was tolled for 2,074 days (due to Defendant Howard's combined bankruptcy proceedings). Therefore, the statute of limitations expired on April 16, 2008. If the December 8, 1997 assessment date is used, then without tolling, the Government had until December 10, 2007 to commence collection proceedings. *See* 26 U.S.C. § 6502(a); Fed.R.Civ.P. 6(a)(3). With 192 days tolling (due to Defendant Howard's third bankruptcy proceeding), the Government had until June 19, 2008 to commence collection proceedings. Consequently, the Government's action filed on November 26, 2007 is timely with regard to tax year 1989.

- 12 -

1  § 6503(h)(2). Consequently, under either the Government's calculation[9] or the Court's, the
2  Government's action filed on November 26, 2007 is timely with regard to tax years 1990 and
3  1991.

### (6.)   Collection for Income Tax Year 1996

The earliest assessment date for 1996 income tax liabilities is September 2, 2002. (Response, Ex. L)   The statute of limitations will expire on September 2, 2012. *See* 26 U.S.C. § 6502(a).  The Government's action filed on November 26, 2007 is timely with regard to tax year 1996.

### (7.)   Collection for Income Tax Years 1997 through 1999

The earliest assessment date for tax years 1997, 1998 and 1999 is May 10, 2004. (Response, Ex. M, N, O) The statute of limitations will expire on May 12, 2014. *See* 26 U.S.C. § 6502(a); Fed.R.Civ.P. 6(a)(3).   The Government's action filed on November 26, 2007 is timely with regard to tax years 1997 through 1999.

### (8.)   Collection for Income Tax Years 2000 through 2003

The earliest date of assessment for tax years 2000 through 2003 occurred in 2006. (Response, Ex. P, Q, R, S) The statute of limitations will expire in 2016. *See* 26 U.S.C. § 6502(a).  The Government's action filed on November 26, 2007 is timely with regard to tax years 2000 through 2003.

### (9.)   Collection for Civil Penalties for 1988, 1990, 1991, and 1992

The Government initially calculated the statute of limitations for 1988, 1990, 1991 and 1992 using the earliest assessment date of May 6, 1996. (Response, pp. 10-11) However, the Government has explained that the instant collection action is for penalties assessed on May 18, 1998 given that the May 6, 1996 assessment was abated due to the automatic

---

[9]Using the Government's calculation, the expiration date is April 16, 2008. The Government indicated May 15, 2008 for tax year 1990 and April 16, 2009 for tax year 1991. (Response, pp.7, 9)  This discrepancy is of no moment given that under the corrected date, April 16, 2008, the Government's action filed on November 26, 2007 is timely with regard to tax years 1990 and 1991.

- 13 -

1 bankruptcy stay then in effect. (Supplemental Brief, p. 5) The Government's action filed on
2 November 26, 2007 is timely with regard to either assessment date.[10]

### 3. Homestead Exemption

Defendant Howard also argues that the homestead exemption shields his property from foreclosure. It is well-settled that homestead exemptions under state law are ineffective against federal tax liens. *See United States v. Rodgers,* 461 U.S. 677, 693-694 (1983) (the Supremacy Clause prevents the use of a state-created interest to block a forced sale under 26 U.S.C. § 7403); *United States v. Bess,* 357 U.S. 51, 57 (1958), *superseded on other grounds by* 26 U.S.C. § 6332(b), ("The provisions of the Internal Revenue Act creating liens upon taxpayer's property for unpaid taxes...do not specifically provide for recognition of such state laws."); *see also* William D. Elliott, *Federal Tax Collections, Liens & Levies*, ¶ 13.11[1] ("any property exempt from execution under state, personal, or homestead exemption laws is subject to levy for collection of federal taxes.") Defendant Howard's property is subject to the instant action.

### C. Defendant Howard's January 8, 2008 Motion to Dismiss (Doc. No. 12)

The Government commenced this action "pursuant to 26 U.S.C. §§ 7401 and 7403 of the Internal Revenue Code at the direction of the Attorney General of the United States and at the request and with the authorization of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury." (Complaint, pp. 1-2) Defendant

---

[10]If May 6, 1996 is used, the limitations period would have ordinarily expired on May 8, 2006. *See* 26 U.S.C. § 6502(a); Fed.R.Civ.P. 6(a)(3). The statute of limitations was tolled until April 16, 2008--a total of 709 days (from May 6, 1996 until October 4, 1997 and April 16, 1999 through October 24, 1999 due to Defendant Howard's bankruptcy proceedings) The Government states that the limitations period would expire on April 13, 2009 (Response, p. 7) or March 13, 2009 (Response, p.11) However, when using the Government's stated figures to make the calculation, the result is March 14, 2008. Any discrepancy is inconsequential given that the Government commenced the instant action in November 2007. If the May 18, 1998 assessment date is used, allowing 192 days tolling for the third bankruptcy proceeding, the statute of limitations would expire in November 2008. In sum, the Government's action filed on November 26, 2007 is timely for the civil penalties for 1988, 1990, 1991, and 1992.

1 Howard argues that the Court lacks jurisdiction because "[t]here is no enabling [r]egulation for section 7403 in 26 C.F.R..." and without such regulation the law is without effect. (January 8, 2008 Motion, p. 1) He also argues that jurisdiction is lacking because the Secretary of the Treasury has not delegated authority to "any IRS agent to commence" a civil suit under section 7403.

Section 7403(a) provides:

> In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability. For purposes of the preceding sentence, any acceleration of payment under section 6166(g) shall be treated as a neglect to pay tax.

26 U.S.C. § 7403(a). The statute also specifies the appropriate parties and vests the district court with jurisdiction to adjudicate the matter and to a appoint a receiver. 26 U.S.C. § 7403(b)-(d). Defendant Howard stresses that the Code of Federal Regulations does not mention a delegate of the Secretary. (January 8, 2008 Motion, p. 2)

Congress has granted the Secretary of the Treasury broad authority to "prescribe all *needful* rules and regulations for the enforcement of [the tax code], including all rules and regulations as *may* be necessary by reason of any alteration of law in relation to internal revenue." 26 U.S.C. § 7805(a) (emphasis added). *See also Granse v. United States,* 892 F.Supp. 219, 224 (D.Minn. 1995) (*citing Commissioner of Internal Revenue v. Engle,* 464 U.S. 206, 226-27, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984)). However, "[s]ection 7805(a) does *not* require the promulgation of regulations as a prerequisite to the enforcement of each and every provision of the Code." *Granse,* 892 F.Supp. at 224 (emphasis in original). Instead, section 7805(a):

> is a general grant of authority by Congress to the Commissioner to promulgate-as necessary-"interpretive regulations" stating the agency's views of what the existing Code provisions already require. *E.I. duPont de Nemours & Co. v. Commissioner of Internal Revenue,* 41 F.3d 130, 135 & n. 20 (3[rd] Cir.1994). ..The power of the Commissioner to promulgate regulations pursuant to section 7805(a)

> ... "is not the power to make law," but only the power "to carry into effect" the will of Congress as expressed by the statute. *Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129, 134... (1936). In cases where "the provisions of the [Code] are unambiguous, and its directions specific, there is no power to amend it by regulation." *Koshland v. Helvering*, 298 U.S. 441, 447... (1936).
>
> *Lovett's Estate v. United States*, 621 F.2d 1130, 1135 (Ct.Cl.1980). Thus, if the Congressional mandate of the Code provision is sufficiently clear, an interpretative regulation is not necessary. *Russell v. United States,* 95-1 U.S.Tax Cas. (CCH) ¶ 50,029, at 87,122, 1994 WL 75063 (W.D.Mich. Nov. 23, 1994).

*Id.* (holding that the plaintiff failed to show that the statute at issue was "so ambiguous or unclear as to require the promulgation of an interpretative regulation."). *See also Watts v. Internal Revenue Serv.,* 925 F.Supp. 271, 277(D.N.J. 1996) ("By 'needful rules and regulations,' Congress did not intend to require the promulgation of unnecessary regulations."); *Capra v. Smith,* 1998 WL 723153 at *4 (D. Ariz. July 20, 1998) (The provisions of section 7508(a) do "not mean that implementing regulations are required to enforce every provision in the tax code."); *United States v. Stoecklin,* 848 F.Supp 1521, 1525 (M.D. Fla. 1994) ("regulatory embellishment is unnecessary..." where the procedure is clearly set forth in the statute). Section 7403(a) specifically authorizes "the Attorney General or his delegate, at the request of the Secretary,..." to direct the filing of civil enforcement actions in the district court. 26 U.S.C. § 7403(a). On this record, Defendant Howard has failed to show that section 7403(a) is so ambiguous or unclear as to require the promulgation of an interpretive regulation.

Defendant Howard also argues that the "appropriate" delegate of the Secretary is an an ATF agent and that ATF agents are not authorized "to enforce any Subtitle A Internal Revenue statutes, but [are] restricted to properly taxed commodities under his (her) authority, subject to tax. Alcohol, Tobacco, and Firearms and their related products." (January 8, 2008 Motion, p.2)

Defendant Howard is mistaken. The Complaint alleges that this action was commenced by the Attorney General, "at the request and with the authorization of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury."

- 16 -

(Complaint, pp. 1-2) Congress has authorized the Secretary of the Treasury to request the Attorney General, or his delegate, to file civil court actions for the collection of taxes and enforcement of liens. 26 U.S.C. §§ 7401 (civil actions must be authorized by the Secretary of the Treasury and commenced under the direction of the Attorney General or his delegate); 7403 (the Attorney General or his delegate, may file an action in district court at the request of the Secretary). The Secretary, through Treasury Department Orders, has delegated authority to the Commissioner of Internal Revenue to take various actions to administer and enforce the Internal Revenue laws. *See United States v. Saunders,* 951 F.2d 1065, 1067-1068 (9th Cir. 1991); *Lonsdale v. United States,* 919 F.2d 1440, 1445-1446 & n.3 (10th Cir. 1999). Thus, authority lies with the IRS, not the ATF, for this action. *See e.g., Id.; Fairchild v. IRS,* 450 F.Supp. 2d 654, 659 (M.D. La. 2006) (in light of delegation order, "the IRS, not the ATF" had authority to file Notices of Federal Tax Liens). This action was validly authorized and this Court has jurisdiction over this matter.

D. Defendant Howard's January 28, 2008 Motion to Dismiss (Doc. No. 15)

Defendant Howard challenges the authority of the IRS to assess taxes and to prepare substitute returns. He also challenges the existence of "'Income Tax'" and its application to himself as a "[p]rivate [m]an" who was "paid for work in the private sector." (January 28, 2008 Motion, pp. 2-6)

Under section 6201 of the Internal Revenue Code, "[t]he Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title..." 26 U.S.C. § 6201(a). The term "Secretary" is defined in the Internal Revenue Code to mean "the Secretary of the Treasury or his delegate." 26 U.S.C. § 7701(a)(11)(B).[11] "The term 'or his delegate'...when used with reference to the Secretary of the Treasury means any officer, employee, or agency of the Treasury Department duly authorized by the Secretary

---

[11] On June 17, 2008 section 7701 was amended. *Heroes Earnings Assistance and Relief Tax Act of 2008*, Pub.L.No. 110-245, 122 Stat. 1624 (2008). The amendments do not affect the terms discussed herein.

of the Treasury directly, or indirectly by one or more redelegations of authority to perform the function mentioned or described in the context..." 26 U.S.C. § 7701(a)(12)(A)(i). The Ninth Circuit has recognized that the IRS has authority to assess taxes. *See Law Offices of Jonathan A. Stein v. Cadle Co.*, 250 F.3d 716, 720 (9th Cir. 2001) (*citing* 26 U.S.C. §§6201-6204).

Additionally, section 6020(b) authorizes "the Secretary" to make substitute returns where a "person fails to make any return required by any internal revenue law or regulation...or makes, wilfully or otherwise, a false or fraudulent return..." 26 U.S.C. § 6020(b)(1). Further, where no return is filed, "the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." 26 U.S.C. § 6501(c)(3). "Treasury regulations specifically allow the Secretary to delegate the authority to prepare [substitute returns] to district directors or other IRS employees." *In re Rosemiller,* 188 B.R. 129, 136 (D.N.J. 1995) (*citing* 26 CFR 301.6020–1(b) and rejecting argument that IRS employee did not have authority to prepare substitute return). *See also Hughes,* 953 F.2d at 536 (The Secretary may delegate power to collect taxes "down the chain of command...to the Commissioner of Internal Revenue, to local IRS employees...") Thus, despite Defendant Howard's argument to the contrary, the IRS was authorized to prepare substitute returns.

As to Defendant Howard's assertions that there is no income tax, that the income tax is not applicable to private men, and that being paid for work in the private sector does not constitute a revenue taxable activity, the Government persuasively argues that, "[t]here is simply no support or authority for Howard's arguments...." (Response to Third Motion, p. 4) (Doc. No. 16) *See Lonsdale,* 919 F.2d at 1448 (characterizing arguments that the income tax is invalid and does not apply to individuals and wages as "completely lacking in legal merit and patently frivolous..."). In the context of Defendant Howard's arguments raised herein, the Government's position prevails. *Id.* (*See also* Response to Third Motion, p. 4 (*citing Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 431, (1955) (holding that income is not limited to gains or profits); *Reese v. United States,* 24 F.3d 228, 231 (Fed.Cir.

- 18 -

1  1994) (noting that 26 U.S.C. § 61 defines "gross income" as income from whatever source
2  derived)).

3  Defendant Howard also states that "[t]here are: Direct Taxes, which must be
4  apportioned." (January 28, 2008 Motion, p.2) The Government construes Defendant
5  Howard's statement "as an assertion that the Sixteenth Amendment does not authorize a
6  direct non-apportioned income tax on resident United States citizens..." (Response to Third
7  Motion, p.4) The Ninth Circuit has noted the "patent absurdity and frivolity" of such an
8  argument. *In re Becraft,* 885 F.2d 547, 549 (9th Cir. 1989) ("For over 75 years, the Supreme
9  Court and the lower federal courts have both implicitly and explicitly recognized the
10 Sixteenth Amendment's authorization of a non-apportioned direct income tax on United
11 States citizens residing in the United States and thus the validity of the federal income tax
12 laws as applied to such citizens.") (citations omitted).

13 E.     Defendant Howard's February 25, 2008 Motion to Dismiss (Doc. No. 20)

14 Defendant Howard's February 25, 2008 Motion to Dismiss consists of a litany of
15 reasons why he believes that "[t]he prosecution has brought a bogus filing to this Court..."
16 (February 25, 2008 Motion to Dismiss, p.1) As in his previous motions discussed above, he
17 challenges the existence of the income tax and its application to individuals, IRS authority
18 as exercised in this action, this Court's jurisdiction, apportionment, in addition to other vague
19 assertions concerning the procedures employed by the IRS and lack of master files. The
20 Government asserts that Defendant Howard's "arguments are frivolous, *see Lonsdale*..., [919
21 F.2d at 1449]...(characterizing arguments similar to those made by Howard as 'completely
22 lacking in legal merit and patently frivolous')..." (Response to Fourth Motion, p. 3) (Doc.
23 No. 21) The Court agrees.

24 III.    CONCLUSION

25 The Government's action is timely filed. This Court has jurisdiction over this action.
26 Defendant Howard's arguments advanced in his four pending motions to dismiss are without
27 merit. Therefore, this action should not be dismissed.

28 IV.    RECOMMENDATION

- 19 -

For the foregoing reasons, the Magistrate Judge recommends that the District Court:

(1) deny Defendant Howard's December 26, 2007 Motion to Dismiss, construed as a motion for summary judgment as discussed above, (Doc. No. 10);

(2) deny Defendant Howard's January 8, 2008 Motion to Dismiss (Doc. No. 12);

(3) deny Defendant Howard's January 28, 2008 Motion to Dismiss (Doc. No. 15);

(4) deny Defendant Howard's February 25, 2008 Motion to Dismiss (Doc. No. 20); and

(5) direct Defendant Howard to file an Answer to the Complaint within 20 days after the Court's Order.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within ten days after being served with a copy thereof. Fed.R.Civ.P. 72(b).

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 25th day of June, 2008.

_____
Héctor C. Estrada
United States Magistrate Judge